RESIDENTIAL LEASE OF TRIBAL OWNED LAND

THIS IS A CORRECT AND
TRUE COPY OF DOCUMENT
SENT FOR RECORDING

7-27-04 RD

Lease No.: __RL-3975(04)__
Contract No.: _____
Tract No.: _____

THIS Lease is made and entered into by and between __the Bad River Tribal Council__ for and on behalf of __the Bad River Band of Lake Superior Chippewa__ Tribe of Indians, hereinafter designated as "Lessor," and Elizabeth Nelson (430U001875), a tribal member, residing upon the Bad River Indian Reservation, hereinafter designated as "Lessee."
Lessee's mailing address: _P.O. Box 11, Odanah, WI 54861_.

WITNESSETH

1. SECRETARIAL APPROVAL; FEDERAL AGENCY APPROVAL; DEFINITIONS OF FEDERAL AGENCY, TRIBE, and LENDER. As used in this lease, the term "Secretary" means the Secretary of the Interior or his or her duly authorized representative. This lease is subject to the approval of the Secretary pursuant to the Act of August 9, 1955, 69 Stat. 539, as amended, 25 U.S.C. § 415, as implemented by Title 25, Code of Federal Regulations, Part 162. The form of this Lease has been accepted by the Secretary of Housing and Urban Development (HUD) pursuant to 24 C.F.R. § 203.43h(c), which implements Section 248 of the National Housing Act, 12 U.S.C. § 1715z-13, for use in connection with Federal Housing Administration (FHA) insurance of a mortgage on the interest created by this Lease, and pursuant to 24 C.F.R. § 1005.107, which implements Section 184 of the Housing and Community Development Act of 1992 (Pub. L. 102-550) for use in connection with HUD's issuance of a loan guarantee of a mortgage on the interest created by this Lease. The form of this Lease has also been accepted by the Secretary of the United States Department of Agriculture (USDA) for use in connection with the issuance by USDA or its Rural Housing Service (RHS) of a direct or guaranteed loan pursuant to section 502 of the Housing Act of 1949 as amended, 42 U.S.C. § 1472, and accepted by the Secretary of the Veterans Affairs (VA) for use in connection with the issuance by VA of a direct or guaranteed loan pursuant to chapter 37 of Title 38, United States Code, secured by the interest created in this Lease. As used in the context of this Lease, the term "Tribe" or "Tribal" refers to the respective Tribe who enters into this Lease as the "Lessor". For future reference, "Federal Agency" refers to HUD, VA, and USDA. When used in this Lease, the "lender" is any mortgagee that a Federal Agency has approved or a Federal Agency which makes a direct loan. With respect to mortgages which are insured under Section 248 of the National Housing Act, the lender must be approved by the Federal Housing Administration. The term "lender" also includes any of the lender's successors or assigns of the lender's right, title to, or interest in, the Mortgage and any subsequent note holder secured by the Mortgage. The assignment of the mortgage or any interest therein does not require the consent of the Tribe.

2. PREMISES. Lessor hereby Leases to the Lessee all that tract or parcel of land situated on the _Bad River_ Indian Reservation, County of _Ashland_, State of _Wisconsin_, and described as follows (the leased premises):

See attached legal description.

3. USE OF PREMISES. The purpose of this Lease is to enable the Lessee to construct, improve, and maintain a dwelling and related structures on the Leased Premises, and otherwise to use said premises as a principal residence. The Lessee agrees not to use any part of the Lease Premises for any unlawful conduct or purposes and will comply with all applicable Federal Laws.

Exhibit A

4. TERM. Lessee shall have and hold the Leased Premises for a term of _25 with an automatic renewal of 25_ years beginning on the effective date of this Lease. This Lease may not be terminated by either or both parties during its term if, and as long as, the Lease and/or any improvements on the premises, or any interest therein, is mortgaged or otherwise pledged as security for any loan in accordance with the provisions hereof, unless consent in writing to such termination is given by the lender and, if the loan is guaranteed, insured, or made by a Federal Agency, a written consent of that Agency is also required. This Lease shall not be subject to any forfeiture or reversion and shall not otherwise be terminable, if such event would adversely affect any interest in the Leased Premises, including improvements thereon, acquired in accordance with the provisions hereof by the holder of any mortgage or lien, or of any purchaser at a foreclosure sale under such mortgage (or lien) or under any conveyance given in lieu of foreclosure, or of any holder subsequent to such purchase. In the event a Federal Agency, acquires a mortgage on the interest created by this Lease by assignment from a lender, the Lessor shall not terminate the Lease without the written consent of the respective Federal Agency, as long as the mortgage is in force.

5. RENT. The improvement of housing for Tribal families is a public purpose of the Lessor. The consideration for this Lease is (1) the obligation of Lessee to further said purpose, (2) the promise hereby given by the Lessee to pay the Lessor rent at the rate of $_20.00_ per _year_, (3) the extinguishment, hereby agreed to by Lessee, of any and all use rights heretofore held by Lessee in the Leased Premises, so that Lessee shall hereafter hold rights only by virtue of this Lease, and (4) other good and valuable considerations, the receipt of which is hereby acknowledged by Lessor. Rent may be subject to adjustment pursuant to 25 CFR 162.

6. IMPROVEMENTS. All buildings or improvements now existing or hereafter constructed on the Leased Premises shall be the leasehold property of the Lessee during the term of this Lease, including any extension or renewal thereof. During the term of this Lease, Lessee shall obtain any necessary governmental permits, approvals or authorization required for the construction and use of all improvements he or she (they) place(s) or cause(s) to be places on the Leased Premises, and shall comply with all laws applicable to the construction and use of improvements.

7. USE RIGHT. Upon expiration of this Lease, or upon its termination in accordance with the terms hereof, unless such termination is due to default upon the part of the Lessee, Lessee or any successors in interest shall be entitled to use rights in the Leased Premises if qualified under the laws of the Tribe. If not so eligible, Lessee, his or her (their) sub Lessee and any successors in interest shall, upon demand, surrender to Lessor upon expiration or other termination of this Lease complete and peaceable possession of the Leased Premises and all improvements thereon which have not been relocated as permitted under Paragraph 23 of this Lease, which shall be the property of the Tribe.

8. FEDERAL SUPERVISION.

    (a) Nothing contained in the Lease shall operate to delay or prevent a termination of Federal responsibilities with respect to the Leased Premises by the issuance of a fee patent, the lifting of restrictions on alienation, or otherwise during the term of the Lease; such termination, however, shall not serve to abrogate the Lease.

    (b) No member of Congress or any delegate thereto or any Resident Commissioner shall be admitted to any share or part of this Lease or to any benefit that may arise herefrom.

9. QUIET ENJOYMENT. Lessor agrees to defend the title to the Leased Premises and also agrees that Lessee and any successors in interest shall peaceably and quietly hold, enjoy and occupy the Leased Premises for the duration of this Lease without any hindrance, interruption, ejection, or molestation by Lessor or by any other persons whomsoever, except if the requirements of any part of this Lease are not kept

by the Lessee. Notwithstanding the foregoing, Lessee and his or her (their) assigns are (is) subject to all the laws of the Tribe to the same extent as any other Tribal member or resident.

10. ASSIGNMENT AND SUBLEASE.

(a) Except as otherwise provided herein, Lessee shall not assign or sublet this Lease without the prior written consent of the Lessor and sureties (as found in 25 CFR 162), and approval of the Secretary of the Interior. If this Lease and/or any improvements on the Leased Premises are mortgaged or pledged as security for a loan, Lessee shall not assign or sublet this Lease without the written approval of the lender and the respective Federal Agency. Lessee may assign the Lease and deliver the possession of the Leased Premises, including any improvements thereon, to the lender or its successors, or Federal Agency guaranteeing or insuring the loan, if Lessee defaults in any mortgage or other loan agreement for which the lease and/or improvements on the Leased Premises are pledged as security, and, in such event, the lender or its successors in interest may transfer this Lease or possession of the Leased Premises to a successor Lessee; provided, however, that the Lease may only be transferred to another member of the Tribe or tribal entity. Nothing in this Lease shall prevent the Lessee, with the approval of the Secretary of the Interior and the Secretary of HUD (for Section 248 insured loans), from executing and recording a mortgage, declaration of trust and/or other security instrument as may be necessary to obtain financing for the purchase of a dwelling, refinancing of an existing mortgage, construction and/or improvement of a dwelling and related structures, or shall prevent the mortgagee or other lender from foreclosing or instituting other appropriate proceedings under law in the event of default of any mortgage or other loan agreement by the Lessee, or assigns. Except in cases involving loans for home construction or home improvement by a bank, recognized lending institution, or a lending agency of the United States Government, where no such consent or approval of Lessor shall be required, Lessee may not execute a mortgage, declaration of trust or other security instrument pledging their interest in this Lease or any improvements on the Leased Premises without the prior written consent of the Lessor and the approval of the Secretary.

Notwithstanding the provisions contained above, the following additional requirements shall be applicable to a Lease which secures a mortgage insured, guaranteed or held by a Federal Agency.

(b) Notwithstanding that the term sublease is used herein, the Lessee shall not sublease the premises if the Lease is the security for a mortgage insured under Section 248. The Lessee may assign the lease in accordance with the terms hereunder.

In the event a Federal Agency is the lender or acquires the mortgage secured by this Lease, and subsequently acquires said Lease by foreclosure, or by the assignment of said Lease by Lessee, his or her (their) Lessees or assigns (for which the approval of the Tribe is not required), then:

(1) The appropriate Federal Agency, (the Agency involved in this transaction) will notify the Tribe of the availability of the Lease for sale, the sale price of the home and other terms of the sale.

(2) The Lease may only be assigned to another tribal member or tribal entity, except that the appropriate Federal Agency may lease the Lease Premises

Exhibit A

      to a non-member under the conditions specified herein. Any such sublease or assignment shall be executed consistent with tribal law and Federal law.

(3)  If a purchaser is found, the Lease will be transferred by the Federal Agency, to the purchaser, with the prior written consent of the appropriate Tribe.

(4)  If a purchaser cannot be found, the appropriate Federal Agency shall be entitled to sublease the Leased Premises and improvements without the prior written approval of the Tribe. Such sublease shall be to a member of the Tribe, unless a tribal member Lessee cannot be found, in which case the Federal Agency may sublease to any individual. The term of the initial Lease period and any succeeding period shall not exceed one year each. Any purchase of the Lease shall be subject to any sublease by the Federal Agency pursuant to this subsection.

(5)  No mortgagee (except a Federal Agency as mortgagee or assignee of a mortagee) may obtain title to the interest created in this Lease without the prior written consent of the Tribe.

  In the event that the lender is the entity responsible for acquiring the Lease and the leasehold estate by foreclosure , the lender shall have the rights of the Federal Agency who had insured or guaranteed the foreclosed mortgage under subparagraphs (1) through (5) above, provided this sentence does not apply to loans insured under HUD/FHA's Section 248 program.

  11. OPTION. Subsequent to the Lessee's breach of any covenant or agreement under a mortgage or other security instrument for which the Lease or any improvements on the Leased Premises are pledged as security, and upon the expiration of any applicable cure period, the Lessor shall have an option (the "option" herein) to acquired the Lessee's leasehold interest, (subject to all valid liens and encumbrances) upon either payment in full of all sums secured by the mortgage or assumption of the loan with the approval of the lender or the applicable Federal Agency as evidences by the note and mortgage and execution of an assumption agreement acceptable in all respects to the Lender. Such option is subject to the following conditions:

(a)  If the Lessee or any assignee of Lessee fails to cure the default, the lender shall give written notice to the Lessor any applicable Tribal housing authority of Lessee's of its assignee's failure,

(b)  If the Lessee fails to cure the default, and said notice shall be given before the lender or successor invokes any other remedies provided under the mortgage or by law. Thereafter, the lender may issue an acceleration notice to the Lessee, its Lessees or assigns, under the mortgage or other security instrument, requiring the Lessee, its Lessees or assigns to pay all sums secured by the mortgage or other security instrument. If the Lessee, its Lessees or assigns fail to cure the default in accordance with the terms of the lender's acceleration notice, the lender shall give the Lessor written notice of said failure to cure. The Lessor may exercise its option at any time within thirty (30) days of the date of the lender's written notice to the Tribe of said failure to cure. This option may be exercised by notice in writing from the Lessor to the Lessee and the lender.

(c)  Notwithstanding the Lessor's option to acquire the Lessee's interest in the Leased Premises, such option shall be subject to any right the Lessee may have under the

mortgage or by law to reinstatement after the acceleration, and the right to bring the appropriate court action to assert the non-existence of a default or any other defense to acceleration and sale or foreclosure.

(d) The estate acquired by the Lessor through the exercise of the option shall not merge with any other estate or title held by the Lessor as long as the leasehold interest or any improvements on the Lease Premises, or any interest therein, are mortaged or otherwise pledged as security for any loan, and the leasehold interest shall remain subject to any valid and subsisting mortgage or other security instrument.

12. RESERVATIONS. Lessee shall use the premises exclusively for residential purposes, except as otherwise agreed to by the parties. Any rights not expressly provided are reserved by the Lessor.

(a) Minerals. The Lessor reserves all rights, as owned by the Lessor, to all mineral rights, including but not limited to oil, gas, or hydrocarbon substances. The Lessor shall not exercise surface entry in connection with reserved mineral rights without prior written consent of the Lessee and sureties (as found in 25 CFR 162).

(b) Timber. The Lessor reserves all rights, as owned by the Lessor to timber and forest products on the premises.

(c) Water. The Lessor reserves all rights, as owned by the Lessor, to water on the premises, except that which is needed for residential purposes.

13. EFFECTIVE DATE. This Lease and all its terms and provisions shall be binding upon the successors, and assigns of the Lessee and any successor in interest to the Lessor, and shall take effect on _____ or upon the date of approval by the Secretary of the Interior, whichever is later.

14. OBLIGATION TO THE UNITED STATES. It is understood and agreed that while the Leased Premises are in trust or restricted status, all of the Lessee's obligations under this Lease, and the obligation of his, hers (their) sureties, are to the United States as well as to the owner of the land.

15. ASSENT NOT WAIVER OF FUTURE BREACH OF COVENANTS. No assent, express or implied, to any breach of any of the Lessee's covenants, shall be deemed to be a waiver of any succeeding breach of any covenants.

16. VIOLATIONS OF LEASE. It is understood and agreed that violations of this Lease shall be acted upon in accordance with the regulations in 25 C.F.R. Part 162.

17. CARE OF PREMISES. It is understood and agreed that the Lessee is to keep the premises covered by this lease in good repair. Lessee shall not commit or permit to be committed any waste whatever on said premises and shall not remove or tear down any building or improvements thereto, but shall keep the same in good repair. Lessee shall not destroy or permit to be destroyed any trees, except with the consent of the Lessor and the approval of the Secretary, and shall not permit the premises to become unsightly. The Lessee will be held financially responsible for all unrepaired damages to buildings, fences, improvements, or appearance, except for the usual wear and decay.

18. FORCE MAJEURE. Whenever under this instrument a time is stated within which or by which original construction, repairs or re-construction of said improvements shall be completed, and if during such period any cause reasonable beyond the Lessee's power to control occurs, the period of delay so caused shall be added to the period allowed herein for the completion of such work.

19. INSPECTION OF THE PREMISES. The Secretary, lender, applicable Federal Agency, and the Lessor and their authorized representative shall have the rights, at any reasonable times during the terms of this lease and with reasonable notice to enter upon the leased premises, or any part thereof, to inspect the same and all buildings and other improvements erected and placed theron.

20. INDEMNIFICATION. Neither the Lessor nor the United States, nor their officer, agents, and employees shall be liable for any loss, damage, or injury of any kind whatsoever to the person or property of the Lessee or sub lessees or any other person whomsoever, caused by any use of the Leased Premises, or by any defect in any structure erected thereon, or arising from any accident, fire, or other casualty on said premises or from any other cause whatsoever; and Lessee, as a material part of the consideration for this lease, hereby waives on Lessee's behalf all claims against the Lessor and/or the United States and agrees to hold Lessor and/or the United States free and harmless from liability for all claims for any loss, damage, or injury arising from the use of the premises by Lessee, together with all costs and expenses in connection therewith.

21. UTILITIES. Neither the Lessor nor the United States shall have any obligation to provide utilities as of the commencement of this Lease. In the event that the Lessee requires utilities, the installation and maintenance thereof shall be the Lessee's sole obligation, provided that such installation shall be subject to the written consent of the Lessor, which the Lessor will not unreasonable withhold. The Lessee shall pay, as they become due, all bills for electricity and other utilities that are furnished to the leased premises.

22. LATE PAYMENTS. It is understood and hereby agreed between the parties hereto that, if any installment of rental is not paid within 30 days after becoming due, interest will be assessed at the existing prime rate, plus three (3) percent, times the amount owed for the period during which payments are delinquent. Interest will become due and payable from the date such rental becomes due and will run until said rental is paid. The interest rate formula is Interest = (Prime Rate + 3%) times (x) amount due.

23. RIGHT OF REMOVAL. Upon termination of the lease, the Lessee of a one-unit single family dwelling shall be entitled, within 30 days, to remove the dwelling and related structures from the leased premises and relocate such improvements to an alternate site, not located on the leased premises. Any Lessee who exercises such a right shall be required to pay all costs related to the relocation of the dwelling unit. Lessee shall leave the land in good order and condition. All other improvements shall become the property of the Lessor at the expiration of this lease. This paragraph does not apply to Section 248 insured mortgage loans.

24. INSURANCE. The Lessee agrees, so long as this lease is in effect, to keep buildings and improvements on the leased premises insured against loss or damage by fire with extended coverage endorsements in an amount equal to the full insurable value of the buildings and improvements insured. Said policy is to be made payable to the Bureau of Indian Affairs for the benefit of the Lessor. Said policy or policies shall be deposited with the Secretary and Lessee shall pay all premiums and other charges payable in respect to such insurance and shall deposit with the Secretary the receipt for each premium or other charge as paid or satisfactory evidence thereof. Except during such time that a mortgage is in effect against this Leasehold interest, that said policy is to be made jointly payable to the Lessee and the Lender, and premium payments provided for per specific requirements of the Lender.

25. ADDITIONS. Prior to the execution of this Lease, provision(s) number(s) __26-32__ have been added hereto and by reference is (are) made a part hereof.

LESSOR:
Bad River Band of Lake Superior Chippewa Indians

_____
Chairman

_____
Secretary

LESSEE:

_____
Elizabeth Nelson

_____


RECOMMENDED FOR APPROVAL:

_____
Realty Officer, Great Lakes Agency

APPROVED:

_____          JUL 21 2004
Superintendent, Great Lakes Agency          Date of Approval

Approved in accordance with authority delegated at 209 DM 8, 230 DM 1, 3 IAM 4, and Release F00 03-01 dated May 2, 2003.

Exhibit A

**ADDITIONAL PROVISIONS**

26. **PURPOSE.** The purpose of this lease is to construct, improve, or maintain a dwelling and related structures on the premises and to use or occupy the premises for residential purposes. The Lessee agrees, within two (2) years of the date of approval of this lease, to have a permanent residence in place. If these conditions are not met in the given time period, the Lessor shall have the option of terminating this lease.

27. **IMPROVEMENTS AND TIMBER.** Any improvements to the land excepting the residential structures must be approved in writing by the Lessor. Before any marketable timber is cut on the parcel of land, the Lessor shall approve the cutting, and at the option of the Lessor, the timber shall become the property of the Lessor. The improvements shall remain the Lessees' property until the termination of this lease. The Lessee shall remove said improvements within 30 days after termination of the lease and if not removed they become the property of the Lessor.

28. **RIGHTS OF WAY.** The Lessor reserves the right to grant rights-of-way across the leased premises for the construction of roads, utility services, and for other public purpose.

29. **PROHIBITIONS.** The Lessee shall not engage in any unlawful activity on the leased premises. If such unlawful activity occurs by the Lessee or their invitees, the Lessor shall have the option of terminating this lease.

30. **LAW OF THE TRIBE.** The Lessee shall abide by any and all ordinances of the Bad River Band of Lake Superior Tribe of Chippewa Indians. Refusal to comply with such ordinances shall be deemed a breach of the lease.

31. **COSTS AND FEES.** If the Lessor must expend any costs or fees in order to have the property returned to the Lessor because of the breach of the lease by the Lessee or because of a hold over, the Lessee shall be responsible for paying such costs, fees, and disbursements.

32. **HOLDING OVER.** Holding over by the Lessee after the termination or expiration of this lease shall not constitute a renewal of an extension giving the Lessee any rights to the leased premises.

## SITE DESCRIPTION

**Nelson, E.**
**RL-3975(04)**

A parcel of land located within NE¼SE¼ Section 25, Township 48 North, Range 3 West, 4th P.M., Ashland County, Wisconsin, more particularly described as follows:

Commencing at SE corner of said Section 25, thence North, a distance of 2142.00 feet, more or less, thence West, a distance of 561.00 feet, more or less, to the Point of Beginning; thence continuing West, a distance of 361.50 feet; thence South, a distance of 361.50 feet; thence East, a distance of 361.50 feet; thence North, a distance of 361.50 feet; to the Point of Beginning, containing 3.00 acres, more or less, subject to all valid existing rights-of-way of record.

Exhibit A



Exhibit A

# Bad River Band Of Lake Superior Tribe Of Chippewa Indians

**CHIEF BLACKBIRD CENTER**                                                              P.O. Box 39 • Odanah, Wisconsin 54861

## RESOLUTION NO. 6-23-04-287

### Granting a Residential Lease to Elizabeth Nelson

**WHEREAS:** The Bad River Band of the Lake Superior Tribe of Chippewa Indians (hereafter Band) is a federally recognized Indian Tribe, organized under Section 16 of the Indian Reorganization Act of 1934, 25 U.S.C. Subsection 476; and

**WHEREAS:** The Bad River Tribal Council is the governing body of the Band pursuant to the Constitution of 1936 as amended, and is empowered by the Constitution to speak and otherwise conduct business in the name of, and on behalf of, the Band; and

**WHEREAS:** Article VI, Section 1(c) of the Bad River Tribal Constitution and By-Laws authorizes the Tribal Council to approve or veto any sale, disposition, lease or encumbrance of Tribal lands; and

**WHEREAS:** Elizabeth Nelson, a tribal member, has acquired a Section 184 Loan from the Chippewa Valley Bank to purchase a home on lease site number RL-1425 described on Attachment A, formerly leased by Lawrence E. Plucinski.

**WHEREAS:** Elizabeth Nelson seeks to lease the site for residential purposes and has submitted an application.

**NOW, THEREFORE BE IT RESOLVED** that the Bad River Tribal Council hereby approves of the issuance of a Residential Lease to Elizabeth Nelson for a term of twenty-five (25) years with an option to renew for twenty-five (25) years, with the lease payment set at twenty dollars ($20) per year, subject to the terms of the lease, for a lease site described as a parcel of land located within the E¼ corner of Section 25, Township 48 North, Range 3 West, Ashland County, Wisconsin. The Bad River Tribal Council requests that the Bureau of Indian Affairs, Great Lakes Agency, prepare and approve any documents necessary for the issuance of the aforesaid lease.

**AND BE IT FURTHER RESOLVED** that the Tribal Chairman and Secretary are hereby authorized to execute any necessary documents on behalf of the band.

### CERTIFICATION

I, the undersigned, as Secretary of the Bad River Band of the Lake Superior Tribe of Chippewa Indians, an Indian Tribe organized under Section 16 of the Indian Reorganization Act, hereby certify that the Tribal Council is composed of seven members, of whom 5 members, constituting a quorum were present at a meeting hereof duly called, noticed, convened, and held on the 23rd day of June, 2004, that the foregoing resolution was duly adopted at said meeting by an affirmative vote of 4 members; 0 against; and 0 abstaining, and that the said resolution has not been rescinded or amended.

/s/ Sandy Kolodziejski
Sandy Kolodziejski, Secretary
Bad River Tribal Council